UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- X
GENERAL ELECTRIC CO.                 :
         Plaintiff,              :
  -against-                         :
L3HARRIS TECHNOLOGIES, INC.          :
         Defendant.              :
                                 :
                                 :
------------------------------------- X

**ECF CASE**

INDEX NO.  1:23-cv-10736

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff GENERAL ELECTRIC CO. ("GE") states the following for its complaint against Defendant L3HARRIS TECHNOLOGIES, INC. ("Harris").

## INTRODUCTION

1.     This is a dispute between GE and Harris over the control of IP addresses used by a joint venture called GE-Harris Railway Electronics, L.L.C. (the "JV") formed by GE and Harris to design, develop, manufacture, market and sell products, systems, and services in the railroad industry. The agreements forming this JV contained provisions specifying assets each party was transferring to the JV, assets that each party agreed would be excluded from the JV, and further assurances that each party would engage in reasonable efforts to ensure that all other necessary resources, documents, certificates, agreements, and other writings used for the furtherance of the JV would be transferred to the JV. Notwithstanding GE's payment of substantial consideration to Harris to acquire Harris' membership interests in the JV in 2001, Harris now belatedly claims that IP addresses that were either transferred to the control of the JV or used in furtherance of the JV

should be declared "owned" by Harris and transferred to the control of Harris. Harris' claims are unfounded, and they constitute breach by Harris of its contractual obligations to GE.

2. The dispute here centers around two "blocks"—series of consecutively numbered IP addresses (the "IP Blocks")—originally registered by Harris but then transferred to and used by the JV.

3. An internet protocol address, or IP address, is the online equivalent of a street address: a unique number that identifies a specific device, such as a computer or a smartphone, connected to the internet. It is not something that can be "owned" in a traditional sense like a piece of property, but a company may pay a central authority called the American Registry for Internet Numbers (ARIN) to maintain control of an IP address so that the company may associate a device with it.

4. An IP address may either be "static," i.e. fixed, meaning that a device uses the same IP address each time it connects to the internet, or "dynamic," i.e. variable, meaning that a different IP address is assigned to a device each time it connects to the internet.

5. Static IP addresses are particularly valuable as there are a finite number of static addresses and a static IP address is often necessary for certain business purposes, for example, for a company to set up a virtual private network ("VPN") that employees can access remotely.

6. In the mid-1990s, the parties entered into a series of contractual agreements to establish the JV. These agreements obligated both parties to transfer certain assets to the JV.

7. Years after the formation of the JV, Harris voluntarily elected to exit the JV.

8. In connection with Harris doing so, the parties entered into a contractual agreement whereby GE made a significant payment to Harris, and in exchange Harris surrendered its

membership interest in the JV which naturally included any claim to assets and authorizations held by the JV, including the IP Blocks.

9. This left GE as the sole party with an ownership interest in the JV and in its assets and the authorizations needed to conduct the business of the JV, including the IP Blocks.

10. Upon Harris' exit from the JV, Harris never asked that GE transfer control of the IP Blocks to Harris.

11. GE paid valuable consideration for the JV, which included control of the IP Blocks when Harris exited the JV, and thereafter GE maintained and assumed it had control of the IP Blocks for more than two decades.

12. Upon information and belief, Harris recently has been focused on achieving certain debt leverage goals, including by selling off certain assets to repay debt. See https://www.reuters.com/markets/deals/l3harris-sell-its-commercial-aviation-solutions-business-800-mln-2023-11-27/.

13. Ignoring the prior substantial consideration it took from GE when it exited from the JV, Harris recently embarked on an aggressive campaign to take control of the IP Blocks from GE by wrongly claiming that it "owned" the IP Blocks so, upon information and belief, Harris could attempt to sell for millions of dollars the access those IP addresses provide to a company other than GE. Upon information and belief, since 2001, Harris has not used either of the IP Blocks in connection with operating its own business.

14. ARIN alerted GE to Harris' attempts to transfer the IP Blocks because GE, and not Harris, is listed as the point of contact for both Blocks. When GE objected to Harris' attempts to transfer the IP Blocks, Harris threatened and pursued unfounded legal action against GE in Florida, in violation of the forum selection clause in the JV sale agreement, claiming that Harris "owned"

the IP Blocks and that GE was interfering with Harris's attempts to make millions of dollars from them via the sale of the IP Blocks (which Harris did not control).

15. As a result, GE seeks a declaration from this Court that Harris has no right to own, control or offer the IP Blocks to others.

16. GE further asserts that Harris has breached the parties' contracts by wrongfully claiming ownership and attempting to dispose of assets and/or authorizations belonging to the JV.

17. In addition, Harris is equitably estopped from now claiming "ownership" of the IP Blocks given its inequitable conduct.

18. Finally, GE asserts a claim for promissory estoppel. Harris' wrongful conduct led GE to reasonably believe that the IP Blocks were transferred to the control of the JV so that the JV could use them to further the JV business, and GE relied on that belief to GE's detriment. Thus, and as detailed further herein, it would be inequitable and to GE's significant detriment if Harris were now permitted to benefit from its wrongdoing and claim ownership of the IP Blocks.

**PARTIES**

19. GE is a New York corporation headquartered at One Financial Center, Suite 3700 Boston, MA 02111. For more than 130 years, GE and its affiliates have invented the future of industry. Today, GE is best known for its work in the Power, Renewable Energy, and Aerospace industries.

20. Upon information and belief, L3Harris is a Delaware corporation with its principal place of business at 1025 W. NASA Boulevard Melbourne, FL 32919.

21. Upon information and belief, Harris was formerly known as Harris Corporation prior to the merger between Harris Corporation and L3 Technologies, Inc. on June 29, 2019.

22. Harris is registered to conduct business with the New York Department of State.

## JURISDICTION AND VENUE

23. This Court has complete diversity jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a). Upon information and belief, Harris is a corporation incorporated under the laws of the state of Delaware with its principal place of business in the state of Florida. GE is a corporation organized under the laws of New York with its principal place of business in the state of Massachusetts. In addition, the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

24. This Court has personal jurisdiction over Harris because it is registered to do business with the New York Department of State, transacts substantial business throughout the State of New York, derives financial benefits from residents of the State of New York, and, upon information and belief, maintains numerous offices and facilities within the state of New York

25. Additionally, the claims of this Complaint arise out of Harris' transaction of business within the State of New York.

26. Venue in this Court exists under 28 U.S.C. §§ 1391(b)(1), (c)(2), as Harris conducts business within this District and is subject to the Court's personal jurisdiction.

27. Venue in this Court is also mandated by the subject contracts. Section 9.10 of the 2001 Membership Purchase Agreement, which GE alleges Harris breached (the "Membership Purchase Agreement"), provides that "This Agreement shall be governed by the laws of the State of New York, excluding (to the greatest extent permissible by law) any rule of law that would cause the application of the laws of any jurisdiction other than the State of New York. All actions and proceedings arising out of or relating to this Agreement shall be heard and determined in any New York state or federal court sitting in the City of New York."

28. In addition, Section 11.05 of the 1995 Transaction Agreement, which GE alleges

Harris breached (the "Transaction Agreement"), provides that agreement "shall be construed in accordance with and governed by the law of the State of New York (without regard to the choice of law provisions thereof)."

29. GE seeks a declaratory judgment under the provisions of 28 U.S.C. §§ 2201 and 2202.

## FACTUAL BACKGROUND

30. The assets at issue here are two blocks of consecutively numbered static "IPv4" IP addresses.

31. An Ipv4 IP address consists of four numbers separated by periods, each between 0 and 255. Thus, there is a finite and fixed number of Ipv4 addresses in existence, numbered between 0.0.0.0 and 255.255.255.255.

32. The first block consists of the 256 unique IP addresses numbered between 192.68.26.0 and 192.68.26.255 (the "192 Block").

33. The second block consists of the 65,536 unique addresses numbered between 147.90.0.0 and 147.90.255.255 (the "147 Block").

34. In the mid-1990s and early 2000's, the parties entered into a series of contractual agreements to establish a JV offering services and products in the railroad industry.

35. Those agreements include in relevant part, a July 7, 1995 Transaction Agreement, a July 7, 1995 Harris Transfer Agreement (the "Harris Transfer Agreement"), and a July 7, 1995 Limited Liability Company Agreement (the "LLC Agreement," and together with the Transaction Agreement, the Harris Transfer Agreement, and the April 30, 2001 Membership Purchase Agreement, the "Subject Contracts").

6

36. According to the LLC Agreement, the purpose of the JV was to "combin[e] the [parties'] complementary skills, *resources* and efforts to design, develop, manufacture (or have manufactured), market and sell, on a worldwide basis, products, systems and services for application in railroad and rail transit operations management and railroad and rail transit vehicle cab control." (emphasis added).

37. The Transaction Agreement required, among other things, that both parties transfer certain assets to the JV.

38. The Transaction Agreement identified the assets that Harris would be required to transfer, the "Harris Transferred Assets," and also identified those assets that Harris would not transfer, the "Harris Excluded Assets."

39. The IP Blocks are not included in the contractual definition of "Harris Transferred Assets" nor in the definition of "Harris Excluded Assets."

40. The definition of "Harris Transferred Assets," however, did include numerous computers owned by Harris and, upon information and belief, those computers were associated with some or all the IP Addresses from the IP Blocks.

41. Upon information and belief, at the time the parties established the JV, IP addresses were not widely understood to be an owned asset, such that they would have been specifically accounted for in defining assets to be assigned to the JV.

42. Rather, the IP Blocks were assets transferred to the JV under the Transaction Agreement concurrently with computers that were assigned to and maintained by the JV.

43. In addition, the IP addresses from the IP Blocks were then used by the GE-Harris Network, a network used to further the business of the JV.

44. For example, Harris does not contest that the IP Blocks were in fact used by the JV to consummate the contemplated transactions. Indeed, Harris admits in its own complaint that "During the initial start-up period of the Railway Company, Harris may have temporarily used the 192.68.26.0/24 and 147.90.0.0/16 Blocks in supporting the Railway Company, under the Harris Administrative Services Agreement, while the Railway Company was operating out of Harris' facilities in Melbourne, Florida."

45. Contemporaneous emails confirm that at least as late as 1998, three years after formation of the JV, IP addresses from the IP Blocks were "active on the GE-Harris network." Ex. 1.

46. Moreover, in entering the Transaction Agreement, both parties understood that further transfers to the JV would need to take place to advance the purpose of the JV, and then specifically contracted to that understanding by providing "further assurances" to each other. Section 6.03 of the Transaction Agreement further requires that "Subject to the terms and conditions of this Agreement, each party will use all reasonable efforts to take, or cause to be taken, all actions and to do, or cause to be done, all things necessary or desirable under Applicable Law and otherwise to consummate the Contemplated Transactions and to refrain from taking any action that would prevent or delay the consummation of the Contemplated Transactions. GE and Harris will execute and deliver such other documents, certificates, agreements and other writings and take such other actions as may be reasonable and necessary or desirable in order to consummate or implement expeditiously the Contemplated Transaction."

47. Control of the IP addresses in the IP Blocks would need to have been transferred to the JV to "consummate the Contemplated Transactions" pursuant to Section 6.03 of the Transaction Agreement.

48. In 2001, the parties came to an agreement whereby GE would purchase Harris' interest in the JV.

49. Pursuant to the Membership Purchase Agreement, Harris received a large one-time payment and in exchange surrendered the entirety of its ownership interest in the JV.

50. Harris agreed to take all further action, including the execution and delivery of all papers necessary to carry out the underlying Transaction Agreement and LLC Agreement.

51. After Harris exited the JV, the two IP Blocks remained registered with ARIN under the name "Harris Controls and Composition."

52. No "subnets" of IP addresses are registered under the name "Harris Controls and Composition" other than the two IP Blocks.

53. GE is the only administrator listed for Harris Controls and Composition.

54. GE is the point of contact ("POC") listed with ARIN for both IP Blocks.

55. GE was unaware that GE's right to control and maintain the IP Blocks was in dispute until 2021, fully 20 years after acquiring all of Harris' interest in the JV, when the American Registry for Internet Numbers ("ARIN"), the entity responsible for the administration of IP addresses, notified GE that Harris was attempting to sell the IP Blocks. GE and the JV have been continuously and exclusively using those IP addresses since before GE's acquisition of Harris' interest in the JV.

56. This was the first time since Harris exited the JV that GE learned that Harris was asserting "ownership" of the IP Blocks.

57. The parties attempted to resolve this matter informally.

58. GE engaged with Harris in what GE believed were good faith discussions directed at resolving this matter informally.

59. In or about November 15, 2023, as part of these conversations, Harris agreed to produce certain documents and information it claimed would establish its "ownership" of the IP Blocks in response to GE's inquiries about how Harris could be taking the position that it had the right to transfer the IP Blocks to others. In response, Harris threatened suit, but at the same time asked GE to enter into a standstill agreement.

60. Counsel for GE inquired what causes of action Harris was considering asserting so that GE could evaluate Harris' standstill proposal.

61. Counsel for Harris claimed he was unable to identify any of the causes of action Harris might assert.

62. GE was waiting for Harris to produce these documents and provide the requested information when, without any notice or further discussion, Harris filed a complaint against GE in the Middle District of Florida, in violation of the forum selection clause in the Membership Purchase Agreement.

63. Upon information and belief, Harris filed the Harris Complaint in anticipation of and with the sole purpose of seeking to preempt GE filing its own complaint against Harris, and to try to force GE to relinquish control of the IP Blocks to Harris.

64. Upon information and belief, Harris agreed to provide documents to GE and then delayed in doing so to delay and dissuade GE from filing its own complaint and to provide Harris with time to prepare and file its own complaint.

65. Upon information and belief, Harris filed the Harris Complaint to secure its forum of choice, its home state of Florida, and to preempt a filing by GE in another forum.

66. Given that the Harris Complaint is nothing more than an attempt to preempt a filing by GE and so litigate in Harris' forum of choice, and given the fact that the relevant contracts

require application of New York law, and in some instances, include a provision designating New York as the proper venue for any dispute, this case should be heard in the Southern District of New York, not in Florida.

## COUNT I
## BREACH OF CONTRACT

67. GE incorporates by reference herein all allegations set forth in paragraphs 1-66 of this Complaint.

68. The LLC Agreement is and was a valid and enforceable contract between the parties.

69. The Transaction Agreement is and was a valid and enforceable contract between the parties.

70. The Harris Transfer Agreement is and was a valid and enforceable contract between the parties.

71. The Membership Purchase Agreement is and was a valid and enforceable contract between the parties.

72. GE has materially performed all contractual obligations imposed upon it by each of the Subject Contracts.

73. The LLC Agreement, Transaction Agreement, and/or the Harris Transfer Agreement required that Harris transfer control of the IP Blocks to the JV.

74. Harris transferred control of the IP Blocks to the JV pursuant to the Subject Contracts.

75. Harris' attempts to now claim ownership of and dispose of the IP Blocks, following their use in connection with the JV, place Harris in breach of the Membership Purchase Agreement, including Section 2.04 thereof.

76. In the alternative, if Harris did not transfer control of the IP Block to the JV, such would be a breach of, at minimum, Section 6.03 of the Transaction Agreement and 5.06 of the Membership Purchase Agreement.

77. As a result of Harris' breaches, GE has suffered actual and substantial damages in an amount to be determined at trial.

## COUNT II
## DECLARATORY JUDGMENT OF OWNERSHIP

78. GE incorporates by reference herein all allegations set forth in paragraphs 1-77 of this Complaint.

79. This claim arises under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

80. There is a real, immediate, substantial, and justiciable controversy between GE and Harris concerning ownership of the IP Blocks.

81. The LLC Agreement, Transaction Agreement, and/or the Harris Transfer Agreement required that Harris transfer control of the IP Blocks to the JV.

82. Harris transferred control of the IP Blocks to the JV pursuant to the Subject Contracts.

83. Harris subsequently surrendered all claims to control the IP Blocks pursuant to the Membership Purchase Agreement.

84. Accordingly, GE is entitled to a declaration that Harris has no ownership interest in nor claim to the IP Blocks, and that GE has the right to control the IP Blocks.

## COUNT III
## DECLARATORY JUDGMENT OF EQUITABLE ESTOPPEL

85. GE incorporates by reference herein all allegations set forth in paragraphs 1-84 of this Complaint.

86. This claim arises under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

87. There is a real, immediate, substantial, and justiciable controversy between GE and Harris concerning ownership of the IP Blocks.

88. Harris took actions and made representations which led GE to reasonably believe that control of the IP Blocks had been transferred to the JV.

89. IP addresses in the IP Blocks were used by the JV.

90. Harris had reason to know that GE would rely upon Harris' representations and/or conduct and that such representations and/or conduct would cause GE to reasonably believe that the IP Blocks had been transferred to the JV.

91. GE reasonably relied upon Harris' representations and/or conduct, and based on that reliance, took actions that would be to GE's detriment were Harris now found to have not transferred control of the IP Blocks to the JV.

92. GE is entitled to a declaratory judgment that Harris is equitably estopped from now claiming "ownership" of the IP Blocks and from claiming that control of the IP Blocks was not transferred to the JV.

## COUNT IV
## PROMISSORY ESTOPPEL

93. GE incorporates by reference herein all allegations set forth in paragraphs 1-92 of this Complaint.

94. Harris engaged in conduct that amounted to a promise to GE that control of the IP Blocks would be transferred to the JV.

95. GE relied on Harris' promises, and on the basis of those promises and Harris' actions, including supporting use of the IP Blocks in connection with the JV, GE reasonably believed that Harris had in fact transferred control of the IP Blocks to the JV.

96. GE has been injured by its reliance.

13

97. It would be inequitable and an injustice if Harris' promise to transfer the IP Blocks to the JV were not now enforced.

## **PRAYER FOR RELIEF**

WHEREFORE, GE requests the following relief in conjunction with the allegations set forth above in this Complaint:

A. The damages suffered by GE as the result of Harris' breaches of contract, in an amount to be determined at trial;

B. Entry of an Order of this Court declaring that Harris has no Harris has no ownership interest in nor claim to the IP Blocks, and that GE is the rightful party to continue to exercise control of the IP Blocks; and

C. Entry of an Order of this Court declaring that Harris is estopped from claiming ownership of the IP Blocks, or from claiming that the IP Blocks were not transferred to the JV.

Dated:  December 8, 2023

        **DLA PIPER LLP (US)**

        By: */s/ Colin Steele*
            Gina Durham (*pro hac vice* forthcoming)
            **DLA Piper LLP (US)**
            555 Mission Street, Suite 2400
            San Francisco, CA 94105-2933
            Telephone: (415) 836-2506
            Facsimile: (415) 659-7320
            gina.durham@us.dlapiper.com

            Colin Steele
            Joshua Schwartzman
            **DLA Piper LLP (US)**
            1251 Avenue of the Americas
            New York, New York 10020-1104
            Telephone: (212) 335-4500
            Facsimile: (212) 335-4501
            colin.steele@us.dlapiper.com
            joshua.schwartzman@us.dlapiper.com

            Attorney for Plaintiff
            **GENERAL ELECTRIC CO.**